**FORMER EMPLOYEES OF LINDEN APPAREL CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 87–04–00625.**

United States Court of International Trade.

June 6, 1989.

Bobby A. McGee, Linden, Tenn., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, for defendant.

## MEMORANDUM OPINION

TSOUCALAS, Judge:

In this action, Billy D. Ward, on behalf of the former employees of Linden Apparel Corporation, challenges a decision of the Secretary of Labor denying certification to apply for worker adjustment assistance benefits under the Trade Act of 1974, 19 U.S.C. §§ 2271–2321, 2395 (1982 & Supp. II 1984). Specifically, plaintiff contests the Secretary's determination that the third eligibility requirement of 19 U.S.C. § 2272 was not satisfied because increased imports did not "contribute importantly" to worker separations at Linden Apparel. The Court has jurisdiction under 28 U.S.C. § 1581(d)(1) (1982).

### Governing Law

Under the trade adjustment assistance program, workers whose loss of jobs are attributable to import competition may receive unemployment compensation, training, job search and relocation allowances, and other employment services. *See* 19 U.S.C. §§ 2291–2298. To apply for benefits, a group of workers must first obtain a certification of eligibility from the Secretary of Labor. Under 19 U.S.C. § 2272, the Secretary is required to certify a group of workers if he determines:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contrib-

uted importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

Employees must meet all three statutory criteria to be certified as eligible for trade adjustment assistance. The instant action involves the Secretary's negative determination of the third criterion.

## Facts

In November 1986, Linden Apparel closed its manufacturing plant which produced men's and boys' overalls and painter jeans. The worker separation occurred in two phases. Approximately 119 employees, or 75 percent of the work force, were displaced when Linden Apparel ceased production in May of 1986. The remaining workers, who were retained to press and package apparel made elsewhere, were sporadically laid-off until the plant closure in November of 1986.

On November 21, 1986, three former employees, on behalf of all the former Linden Apparel employees, submitted to the Secretary of Labor a petition for eligibility to apply for worker adjustment assistance. The Secretary's investigation revealed that Linden Apparel was an exclusive contractor for its parent company, Washington Manufacturing Company (Washington). In view of this, the Secretary treated Washington as Linden Apparel's sole customer for purposes of the customer survey. The survey disclosed that "[Washington] did not use any foreign contractors or import men's and boys' pants and overalls in 1985 or 1986. [Washington] increased its reliance on other domestic contractors and experienced increasing sales in 1986 compared with 1985." *Administrative Record (Public)* at 31.

The Secretary denied certification because, he said, the customer survey demonstrates that imports did not "contribute importantly" to the worker separation at Linden Apparel. The notice of this negative determination was published on March 10, 1987. 52 Fed.Reg. 7330.

On April 10, 1987, Billy D. Ward sought an administrative reconsideration of the Secretary's negative determination. In his letter, Mr. Ward contended, *inter alia,* that: (1) prior to the plant's closing, Haywood Male Inc., an apparel manufacturing company with at least one factory in Haiti, bought out Washington and formed Washington Industries; (2) some of Linden Apparel's machinery were shipped to Haywood Male's plant in Haiti; (3) one of the former employees was sent to repair machines at Haywood Male's Haitian plant; and (4) some former employees pressed, packed, and shipped foreign-made clothing. The Secretary denied the request for reconsideration as untimely, since plaintiff filed its request thirty-one days after the date of publication of the Secretary's determination in the Federal Register. The regulation, 29 C.F.R. § 90.18(a) (1988), provides for the filing of a request for reconsideration within thirty days of the publication date.

In dismissing plaintiff's application as untimely, the Secretary informally advised plaintiff that Haywood Male's operation in Haiti would not form a basis for certification because the plant in Haiti does not produce men's and boys' overalls and painter jeans, but rather men's jackets and shirts. The Secretary further stated that Washington transported most of Linden Apparel's machinery and equipment to domestic locations and that the remainder were shipped to Haiti to make apparel other than men's and boys' overalls and painter jeans.

Mr. Ward sought judicial review by timely mailing a copy of his April 10, 1987 letter to the Office of the Clerk of the United States Court of International Trade. The letter was deemed to constitute a summons and complaint.

## Discussion

■ The Secretary's denial of certification for adjustment assistance is conclusive if it is supported by substantial evidence on the record as a whole and accompanied by reasoned analysis. *See* 19 U.S.C. § 2395(b); *Int'l Union, United Auto., Aerospace and Agricultural Implement Workers of America, UAW v. Marshall,* 584 F.2d 390, 396 n. 26 (D.C.Cir.1978);

*Chapman v. Donovan,* 9 CIT 545, 547 (1985). A reviewing court may remand a case and order the Secretary to further investigate if "good cause [is] shown." 19 U.S.C. § 2395(b). "Good cause" exists if the Secretary's chosen methodology is "so marred that [his] finding is arbitrary or of such a nature that it could not be based on 'substantial evidence.'" *United Glass & Ceramic Workers of North America, AFL–CIO v. Marshall,* 584 F.2d 398, 405 (D.C.Cir.1978); *Cherlin v. Donovan,* 7 CIT 158, 162, 585 F.Supp. 644, 647 (1984). The Court believes remand is warranted in this case because the Secretary conducted an inadequate investigation, thereby failing to reach substantiated conclusions.

▮ To the extent the Secretary treated Washington as Linden Apparel's sole customer, the Secretary's determination is a product of flawed investigative technique. Regarding a parent company as the exclusive buyer is a fiction because arm's length transactions do not occur between a parent and a subsidiary. Under the circumstances of enmeshed business relations between a seller and a buyer, as in this case, the proper subject of customer survey is the first unrelated purchasers of the articles under investigation. This standard is indispensable for the Secretary to fulfill his duty to conduct an unbiased customer survey. The fact that Linden Apparel was selling exclusively to its parent does not discharge the Secretary's obligation to seek data from Washington's customers. It is circular reasoning to carve out an exception to accommodate such situations.

Obtaining information from the customers of Washington is consistent with the focus of the Secretary's investigation: whether "increases of imports of articles like or directly competitive with articles produced by [Linden Apparel] ... contributed importantly" to the closure of Linden Apparel. 19 U.S.C. § 2272(a)(3). The Secretary buttressed his negative determination with the statement that Washington "increased its reliance on other domestic contractors and experienced increasing sales in 1986 compared with 1985." *Administrative Record (Public)* at 31. Inso-far as Washington's garment business included articles other than those produced at Linden Apparel, it was an error for the Secretary to refer generally to Washington's overall sales experience during the period under investigation. The statute requires the Secretary to specifically address those portions of Washington's sales which were directly attributable to the customers of Washington switching to imports of men's and boys' overalls and painter jeans during the relevant period.

▮ The subject determination of the Secretary is flawed for another reason. If the company under investigation is part of a larger corporate entity, the Secretary has a duty of providing a description of the organizational structure and of inquiring into how the subject company fits into the organization. *See* Petition Verification Form, *Administrative Record (Public)* at 3. In the present action, the Secretary did not discover Washington's merger with Haywood Male until Mr. Ward raised the issue in his petition for reconsideration of the Secretary's determination. The Secretary's belated acknowledgement of Washington's corporate ties with Haywood Male, and dismissal of relevance of such business relations for purposes of certification, is unsatisfactory.

It appears that communication with Washington formed the basis for the Secretary's conclusion that Haywood Male's facility in Haiti has no bearing on the certification question. The problem with this approach is that it is no substitute for obtaining business records and statements from the purchasing company as to the reason behind the merger. *See Former Employees of Tyco Toys, Inc. v. Brock, Secretary of Labor,* 12 CIT ——, slip op. 88–114, 1988 WL 88448 (Aug. 26, 1988). To analogize, insofar as Washington Industries is the owner of both Washington and Haywood Male, the former is the "nerve or control center" of the corporate "organism" and the latter firms constitute its "limbs." Under the circumstances, an investigation which only focuses on business dynamics between Linden Apparel and Washington is deficient because this approach is, at best,

an indirect second-handed method for determining whether the cause for consolidation was increased imports of "like or directly competitive" products. 19 U.S.C. § 2272(a)(3).

The Court remands this case to the Secretary to conduct customer surveys consistent with this opinion to ascertain whether the shift in purchases by the customers of Washington from articles that Linden Apparel manufactured to imports "contributed importantly" to the worker separations at Linden Apparel. The Secretary is further directed to inquire into the corporate structure of Washington Industries as it affects Linden Apparel. SO ORDERED.