**FORMER EMPLOYEES OF MICRO ENERGY INTERNATIONAL, INC., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 89–05–00279.**

United States Court of International Trade.

Dec. 16, 1992.

Politis, Pollack & Doram, John N. Politis, Los Angeles, CA, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Jeffrey M. Telep, Gary Bernstecker, Attorney–Advisor, U.S. Dept. of Labor, Washington, DC, of counsel, for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiffs, former employees of Micro Energy International, Inc., Roswell, New Mexico, challenge the determination of the Secretary of Labor (Labor) that they are ineligible for trade adjustment assistance under 19 U.S.C. § 2272 (1988), as amended by section 1421(a) of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107, 1242–43 (1988) (Omnibus Trade Act). This Court has jurisdiction pursuant to 19 U.S.C. § 2395 and 28 U.S.C. § 1581(d)(1).

After considering the arguments of the parties and the administrative record, the Court holds that the determination by the Secretary of Labor is supported by substantial evidence and is in accordance with law. The determination of Labor is affirmed and the action is dismissed.

## BACKGROUND

On October 31, 1988, Marvin Sanders, David Sanders and Otis Sanders filed a petition for certification of eligibility for trade adjustment assistance benefits. Administrative Record at 2 (hereinafter R.). The Sanderses stated in their petition that they were formerly employed by Micro Energy, and were laid off on November 17, 1985. They claimed the company was in the business of natural gas and oil exploration. Their petition further stated that sales and production at Micro Energy declined as a result of OPEC nations lowering the price of oil and natural gas.

Attached to the petition were letters written by each of the plaintiffs explaining their duties while employed by Micro Energy. Marvin Sanders stated that he searched for oil and natural gas leases, staked locations for drilling and filed the necessary paperwork with the Oil and Natural Gas Commission. (R. 3). David Sanders stated that he was working on new drilling devices. (R. 4). Otis Sanders indicated that he was involved in the development of "solar electric for pump jack for production" and leases, as well as being the drilling superintendent for the company. (R. 5).

During Labor's first investigation it made the following findings: Micro Energy was incorporated in August 1985 and dissolved in November 1985; Micro Energy sought to produce an energy source device, but dissolved before any such device was produced; David Sanders was a Micro Energy employee for three months; and Marvin Sanders was an independent contractor with Micro Energy. (R. 17). Thereafter, Labor issued a Notice of Termination of Investigation which denied petitioners' request for certification for eligibility to receive trade adjustment assistance benefits. (R. 19–20).

In its February 16, 1989, Notice of Termination of Investigation, Labor explained that plaintiffs were not covered by the retroactive provisions of section 1421(a)(1)(B) of the Omnibus Trade and Competitiveness Act of 1988. Labor also noted that the Act does not apply to workers such as the plaintiffs who were eligible to be certified for benefits under the Trade Act prior to the implementation of the retroactive provisions. The Notice further stated that because plaintiffs were separated from Micro Energy more than one year prior to the date of the petition, section 223 precluded their certification. (R. 20).

After plaintiffs commenced this action in the United States Court of International Trade, Labor requested a voluntary remand of this matter for further consideration. During this second investigation, Labor sought additional information from the former President of Micro Energy,

Shelley Johnson Quinn. Ms. Quinn replied by letter that Micro Energy was founded to engage in the business of manufacturing an uninterruptible power source. Supplemental Administrative Record at 14 (hereinafter SR). Otis Sanders and Marvin Sanders were described as being under contract as a research consultant and a drilling-site consultant respectively. (SR. 14). Ms. Quinn stated that the company ceased operations due to an inability to raise capital and that "*[i]mports had absolutely no impact, whatsoever, on MEI's revenue, operations or employment.*" (SR. 14) (Emphasis in original).

On October 16, 1989, Labor issued a Notice of Affirmed Termination of Investigation on Remand. (SR. 16). Labor concluded that after reviewing the investigative findings there had been "no error or misinterpretation of the law or of the facts which would justify reconsideration of the Department of Labor's prior decision." (SR. 17).

## CONTENTIONS OF THE PARTIES

Plaintiffs contend that Labor's negative determination is not supported by substantial evidence on the record and is not in accordance with law. Plaintiffs request that the Court order this case be remanded to Labor for the purpose of reopening the investigation on the merits of certifying plaintiffs' eligibility for trade adjustment assistance. Plaintiffs argue that they are covered by the amendments contained in the Omnibus Trade and Competitiveness Act of 1988, because as employees of Micro Energy they were involved in exploring for oil and natural gas.

Defendant opposes plaintiffs' motion for judgment on the agency record and requests the Court to sustain the contested Department of Labor Notice of Affirmed Termination of Investigation on Remand dated October 16, 1989. Labor contends that the negative determination is supported by substantial evidence on the record. Labor argues that since Micro Energy never produced or sold anything, they could not have experienced a decline in sales or production as is required by 19

U.S.C. § 2272(a). Labor further argues that plaintiffs are not eligible for trade adjustment assistance under the amendments contained in the Omnibus Trade and Competitiveness Act of 1988, because Micro Energy did not explore for oil or natural gas.

## STANDARD OF REVIEW

■■■ A negative determination by the Secretary of Labor denying certification of eligibility for trade adjustment assistance will be upheld if it is supported by substantial evidence on the record and is otherwise in accord with law. *See Woodrum v. Donovan*, 5 CIT 191, 193, 564 F.Supp. 826, 828 (1983), *aff'd sub nom.*, *Woodrum v. United States*, 2 Fed.Cir. (T) 82, 737 F.2d 1575 (1984). The findings of fact by the Secretary are conclusive if supported by substantial evidence. 19 U.S.C. § 2395(b). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd*, 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

## DISCUSSION

■■■ The question before the Court is whether Labor properly decided that plaintiffs are ineligible for trade adjustment assistance. Trade Adjustment Assistance benefits are intended to offer unemployment compensation, training, job search and relocation allowances, and other employment services to workers who lose their jobs because of import competition. *See Former Employees of Linden Apparel v. United States*, 13 CIT 467, 467, 715 F.Supp. 378, 379 (1989).

The Department of Labor must follow the requirements of 19 U.S.C. § 2272 when determining whet¹ group of workers is eligible for trade adjustment assistance benefits. The statute is as follows:

(a) The Secretary shall certify a group of workers (including workers in any agricultural firm or subdivision of an agricultural firm) as eligible to apply for adjustment assistance under this part if he determines—

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

(b) For purposes of subsection (a)(3) of this section—

(1) The term "contributed importantly" means a cause which is important but not necessarily more important than any other cause.

(2)(A) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas shall be considered to be a firm producing oil or natural gas.

(B) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, or otherwise produces oil or natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.

■■■ Plaintiffs' assertion that they qualify for assistance under section 2272(b)(2) is contradicted by substantial evidence in the administrative record. Subsection (b)(2) was added to 19 U.S.C. § 2272 in 1988 to extend trade adjustment assistance benefits to workers engaged exclusively in oil and natural gas exploration. The record, however, shows that Micro Energy was in business, not to explore exclusively for oil and natural gas, but to produce Otis Sanders' uninterruptible energy source product

and to develop David Sanders' drilling tool. (SR. 14, R. 4, 5).

Labor did not specifically address the criteria of section 2272(a) when it terminated its investigation. However, based on its findings, Labor implicitly recognized that plaintiffs could not have satisfied the criteria of section 2272(a). Sales and production could not have decreased absolutely as is required by 2272(a)(2) because Micro Energy "did not market any product, nor [sic] services, and made NO REVENUE WHAT-SOEVER...." (SR. 14) (Emphasis in original). Similarly, section 2272(a)(3) was not satisfied, since imports cannot affect sales and production when there were never any sales or production of either a product or service. Furthermore, the President of Micro Energy International, Inc., Shelley Johnson Quinn, stated unequivocally that imports had no impact on Micro Energy's revenue, operations or employment. (SR. 14). Thus, plaintiffs have not only failed to qualify under section 2272(b)(2), but have failed to satisfy the criteria of section 2272(a).

Plaintiffs assert in their memorandum in support of their motion for judgment on the agency record that "the administrative record reveals only cursory and superficial attention to the pertinent and important facts of the case." Plaintiffs' memorandum at 7. " 'Despite plaintiffs' assertion, this Court must show substantial deference to the agency's chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such a nature that it could not be based on 'substantial evidence.' '" *Former Workers, United Mine Workers Local 7925 v. United States*, 13 CIT 641, 644, 1989 WL 87586 (1989) (*quoting United Glass & Ceramic Workers, Etc. v. Marshall*, 584 F.2d 398 (D.C.Cir.1978)). The Court denies any request to remand this case to the Department of Labor as the Secretary's finding is not arbitrary and is based on substantial evidence.

## CONCLUSION

The Court holds Labor's negative determination to be supported by substantial evidence on the record and in accordance with law. Accordingly, judgment is entered in favor of defendant and the action is dismissed.

## ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein: now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, AND DECREED that plaintiffs' motion is denied; and it is further

ORDERED, ADJUDGED, AND DECREED that the Department of Labor Notice of Affirmed Termination of Investigation on Remand dated October 16, 1989, is sustained; and it is further

ORDERED, ADJUDGED, AND DECREED that this action is dismissed.

