FORMER EMPLOYEES OF PARAL-
LEL PETROLEUM
CORPORATION, Plaintiffs,

v.

U.S. SECRETARY OF
LABOR, Defendant.

Court No. 88–05–00383.

United States Court of,
International Trade.

Feb. 27, 1990.

Givens and Kelly, Robert T. Givens and Rayburn Berry, Houston, Tex., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C. and Velta A. Melnbrencis, New York City, for defendant.

MEMORANDUM OPINION
AND ORDER

MUSGRAVE, Judge.

Parallel Petroleum Corporation ("Parallel") is an oil and natural gas-producing firm located in Midland, Texas. This case concerns Parallel's termination from employment of Gary Elander, Rex Paschell and Judy Wilson, who worked as an "integrated exploration team" for the company. These plaintiffs conducted oil and gas exploration activities, and all three were discharged from Parallel's employ between November, 1987 and January, 1988.

Plaintiffs filed a Petition for Trade Adjustment Assistance with the U.S. Department of Labor ("Labor") on February 18, 1988, in response to which Labor initiated an investigation on March 7, 1988 to determine whether the separated workers were eligible to apply for adjustment assistance because of increased imports. On April 20, 1988, Labor decided that increased imports did not contribute importantly to declines at the subject firm, and thus denied plaintiffs' request for benefits.

Plaintiffs then initiated this action pursuant to 19 U.S.C. § 2395, seeking a remand to the U.S. Secretary of Labor ("the Secretary") for further consideration of the denial of trade adjustment assistance benefits under 19 U.S.C. § 2273. Their principal argument centers on the

Secretary's failure to consider the impact of increased oil and natural gas imports on *exploration* activities of the subject firm, which, plaintiff claims, is required under the 1988 amendment to 19 U.S.C. § 2272.[1]

The government, in opposition, claims that the amendment has no retroactive application to plaintiffs because it was not intended to apply to employees of firms that engaged in exploration or drilling *as well as* production of crude oil or natural gas. Because employees of such companies were eligible under the old law to apply for benefits, they are foreclosed from invoking the retroactive provisions of the amendment, argues the government.

Thus, before examining the alleged failure of the Secretary to consider the impact of imports on *exploration* activities of Parallel, the Court must ascertain whether the 1988 amendment to 19 U.S.C. § 2272 has any application under the present circumstances. That amendment has been codified as 19 U.S.C. § 2272(b), and now reads (together with subsection (a)):

> § 2272. **Group eligibility requirements; agricultural workers; oil and natural gas industry**
>
> (a) The Secretary shall certify a group of workers (including workers in any agricultural firm) as eligible to apply for adjustment assistance under this part if he determines—
>
> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated,
>
> (2) *that sales or production, or both, of such firm or subdivision have decreased absolutely,* and
>
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial

separation, or threat thereof, *and to such decline in sales or production.*

> (b) For purposes of subsection (a)(3) of this section—
>
> (1) The term "contributed importantly" means a cause which is important but not necessarily more important than any other cause.
>
> (2)(A) *Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil and natural gas shall be considered to be a firm producing oil or natural gas.*
>
> (B) *Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil and natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.*

19 U.S.C. § 2272 (1988) (emphasis supplied).

The government's argument, in essence, relies entirely on a somewhat garbled section of the amendment to § 2272, and the amendment's legislative history. Section 1421(a)(1)(B) of Pub.L. No. 100–418 provides:

> Notwithstanding section 223(b) of the Trade Act of 1974 [19 U.S.C. 2273(b) ], or any other provision of law, any certification made under subchapter A of chapter 2 of title II of such Act [this subpart] which—
>
> (i) is made with respect to a petition filed before the date that is 90 days after the date of enactment of this Act [Aug. 23, 1988], and
>
> (ii) would not have been made if the amendments made by subparagraph (A) [amending this section] had not been enacted into law, shall apply to any worker whose most recent total or partial separation from the firm, or appropriate subdivision of the firm, described in section 222(a) of such Act [19 U.S.C. 2272(a) ] occurs after September 30, 1985.

---

**1.** In 1988, Congress enacted Public Law 100–418, which amended certain parts of the trade adjustment assistance legislation. That amendment brought oil and gas workers within the scope of the program's coverage; previously, such workers had not been considered as "pro-ducing" an article within the meaning of 19 U.S.C. § 2272, and thus were exempted from trade adjustment assistance benefits. *See Former Employees of Zapata Offshore Co., Inc. v. United States,* 11 CIT 841, 1987 WL 14691 (1987).

In other words, oil and gas workers separated after September 30, 1985 are eligible to apply for benefits under the new amendment as long as their petitions are filed within one year of the date of their separation from employment, and are filed no later than November 18, 1988 (the last business day before the statutory ninety-day period expired on November 21, 1988).[2] Workers may *not* apply if they *would have* qualified for benefits under the old law.

The government then relies on the legislative history of the Omnibus Trade and Competitiveness Act of 1988 to support their theory that because Parallel produced oil, as well as explored and drilled for oil, their employees could have qualified for benefits under the old § 2272. Since the amendment was intended to limit benefits only to independent firms engaged in drilling or exploring, plaintiff has no recourse to the retroactive provisions of the 1988 amendment; thus, argues defendant, the Secretary's decision in this case was supported by substantial evidence in the record and was otherwise in accordance with the law.

H.R.Rep. 576, 100th Cong., 2d Sess. 694 (April 20, 1988) (emphasis added) provides in pertinent part:

> The purpose of this amendment is to facilitate the availability of benefits under the trade adjustment assistance program for workers engaged in exploration or drilling for crude oil or natural gas. Under present law, workers employed by such firms have been denied program benefits because they are not considered to be employed by firms that produce articles that are like or directly competitive with increased imports. *However, under present law, workers engaged in exploration or drilling for firms that also produce crude oil or natural gas are considered as eligible for such benefits.*
>
> The conferees intend that workers employed by independent firms engaged in exploration or drilling be eligible to apply for program benefits on the same basis as workers employed by firms that are engaged in the production of crude oil or natural gas as well as exploration or drilling ...

With this legislative history in mind, the government claims the administrative record amply demonstrates that Parallel was engaged in exploration *and production* of crude oil and natural gas during the time period in question. Therefore, the amendment has no application in this situation, and the Secretary's denial of certification was reasonable.

In their reply to the government's opposition to their motion for judgment on the agency record, plaintiff contends that Parallel was not actually involved in the production of oil and gas during the applicable period prior to their termination. Even if the company did "produce" oil or gas, plaintiff maintains that the amendment applies to firms engaged in exploration or drilling *or production* of natural gas.

Plaintiff asserts that the government's approach was expressly rejected by this Court in *Former Employees of Bass Enterprises Prod. Co. v. United States*, 13 CIT ——, 706 F.Supp. 897 (1989). There, Judge DiCarlo ruled that Labor failed to adhere to the statutory requirements of 19 U.S.C. § 2272 in denying trade adjustment assistance benefits, and the case was remanded. *Id.* at 903. In particular, Labor failed to consider the effect of the 1988 amendment on § 2272(a)(3), requiring that any firm that produced oil or natural gas to be producing articles directly competitive with imports of both oil and natural gas. *Id.* The Court reached this conclusion despite the government's assertion that the 1988 amendment did not apply, since the subject company both explored for and produced the articles under investigation. *Id.* Judge DiCarlo, without reference to the legislative history, cited the plain language of § 2272 in holding that the amended statute applies to " '[a]ny firm, or appropriate subdivision of a firm, that engages in ex-

---

**2.** The government does not dispute that these filing deadlines have been complied with in this case.

ploration or drilling for oil or natural gas, *or otherwise produces oil or natural gas,'* " *id.,* quoting Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1421(a)(1)(A), 102 Stat. 1107, 1243 (1988) (emphasis added).

It appears, then, that reliance upon the legislative history of the amendment is misplaced, as the cited language fails to comport with either the plain language of the statute or case law interpreting the statute. Both § 2272(b)(2)(A) and (B) refer to the "production" of oil and gas as a function that qualifies a firm as "producing an article" within the meaning of § 2272(a)(3). This being so, Congress could hardly have intended to limit the availability of benefits under the amendment to firms engaged *only* in exploration or drilling, when the statute expressly references "production" as a defining term for invoking the benefits of the trade adjustment assistance legislation.

Moreover, in the legislative history (as even the government notes), the distinction between "exploration," "drilling" and "production" is a fine one:

> Because exploration, drilling, and production activities in the crude oil and natural gas industries are *inextricably linked,* the amendment provides that workers engaged in *exploration, drilling, or production* of either crude or natural gas shall be considered as producing either product.

H.R.Rep. 576 at 694 (emphasis added).

If workers engaged in exploration, drilling, or production of crude oil or natural gas are considered to "produce" either product within the meaning of the amendment, Congress cannot have intended to exclude workers from firms engaged in the exploration, drilling and "production" of crude oil or natural gas from invoking the amendment to secure benefits. Limiting benefits to a narrow class of workers engaged only in drilling and exploration would contravene the express language of

the statute, especially given the murky distinction between the three activities noted in the legislative history.[3]

The Court also considers the purposes behind the trade adjustment assistance program to be instructive. These benefits are intended to offer unemployment compensation, training, job search and relocation allowances, and other employment services to workers who lose their jobs because of import competition. *Former Employees of Linden Apparel v. United States,* 13 CIT ——, ——, 715 F.Supp. 378, 379 (1989). Without these benefits, workers in many cases would not possess the financial resources nor even the most basic skills necessary to seek employment in new industries. Congress did not propose to subject these workers to endless arguments about legislative intent and definitions of terms in the United States Code, thereby delaying indefinitely the award of any compensation that might eventually be forthcoming. Such delays defeat the remedial purposes of the statute.

In addition, when the trade adjustment assistance program was created under the Trade Act of 1974, Congress intended to *liberalize* the availability of adjustment assistance for displaced workers. *Former Employees of Rocky Mountain Region Office of Terra Resources, Inc. v. United States,* 13 CIT ——, 713 F.Supp. 1433, 1435 (1989). Given the legislative intent to broaden the availability of benefits, and the remedial purposes of 19 U.S.C. § 2272, this Court rejects the restrictive and unreasonable treatment of the amendment urged by the government. Such treatment, while arguably supported by the legislative history of the 1988 amendment, conflicts with the plain meaning of the statute and its past judicial interpretations. The 1988 amendment applies to workers who were engaged in exploration, drilling and production of crude oil or natural gas, even if those workers could have qualified for benefits under the old law.[4]

---

**3.** Surely, Congress could have anticipated this problem and included more precise definitions of "exploration," "drilling," and "production"

within § 2272's implementing regulations, *see* 29 C.F.R. Subtitle A, § 90.2 (1989).

**4.** This holding, then, obviates the need to consider whether Parallel was indeed engaged in

■ The question remains whether the Secretary's determination was supported by substantial evidence in the record and was otherwise in accordance with the law. Plaintiffs' position is that Labor failed to consider the impact of imported oil and natural gas on Parallel's *exploration* activities. This oversight violated the mandate of 19 U.S.C. § 2272(a)(3), since "production" encompasses "exploration," and the Secretary must evaluate *both* sales and production under the amended statute. The denial of benefits, therefore, was not in accordance with the law, and the case should be remanded for consideration of such impact, argues plaintiff.

The criteria which the Secretary must consider in determining whether plaintiffs qualify for assistance are found in 19 U.S.C. § 2272(a)(1)–(3) (the language of which is set forth earlier). In particular, § 2272(a)(3) requires that the Secretary certify workers if imports like or directly competitive with articles produced by the workers' firm contributed importantly, or threatened to contribute importantly, to the decline in *sales or production* of the subject firm.

The 1988 amendment, *see* § 2272(b)(2)(B), specified that any firm engaging in the exploration or drilling, or otherwise producing oil or natural gas, would be considered a firm "producing" articles directly competitive with imports of oil and natural gas. Thus, claims plaintiff, Labor is required to consider the impact of imported oil and natural gas on the firm's exploration activities when applying § 2272(a)(3), since exploration and drilling fall within the parameters of "production."

Support for this position comes from *Former Employees of Permian Corp. v. United States*, 13 CIT —, 718 F.Supp. 1549 (1989), maintains plaintiff. *Permian* examined the effect of the 1988 amendment upon the eligibility requirements for invoking § 2272. Because plaintiffs failed

to meet the one year filing deadline under the prior law, they could qualify for benefits only if they met the eligibility requirements under the amendment. Since their employing firm was engaged in the business of transporting and selling domestic crude oil, the workers were held ineligible for benefits. *Id.* at 1551. They did not fall within the specific category of workers contemplated by the amendment, and thus were not covered by the retroactive provision allowing an exception to the one year filing deadline. *Id.*

Contrary to plaintiff's view, however, *Permian* merely reinforced the limitation of that group of workers eligible for benefits to those engaged in exploration and drilling for oil, and not more generally to any workers in related industries who may be adversely affected in some way by oil imports. *Id.* The case does not mandate an examination by the Secretary into whether increased imports contributed importantly to a relevant decline in either sales or *exploration* under § 2272(a)(3).

However, *Permian* referred to the legislative history of the 1988 amendment, cited earlier (noting the inextricable linkage of exploration, drilling and production activities). *Id.* at 1550. If the three activities are so intertwined, it seems logical for the Secretary to consider all three when making a determination of the impact of imported oil and natural gas on *production* under the third statutory criterion.

In any event, even if "exploration" is included within the meaning of "production" in § 2272(a)(3), the government contends it has discretion to consider *either* sales or production.[5] Moreover, defendant claims that courts give substantial deference to the method which Labor employs to fulfill its statutory responsibilities. *Donna Kelley, et al. v. Secretary, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987).

"production" of oil or gas prior to the amendment's effective date.

**5.** The government also claims that "production" does not include "exploration" because the 1988 amendment is inapplicable. Defendant's Memo at 15–16. Since the amendment *does* apply,

then, under the government's line of reasoning, "production" would include "exploration" and the Secretary *would* be required to consider the impact of imported oil and natural gas on Parallel's exploration activities.

The government does not cite a statutory provision nor a case to directly support their assertion that "[t]he statute clearly gives discretion to Labor to consider either sales or production." Defendant's Memo at 15. Presumably, as plaintiff points out, the government relies on the language of § 2272(a)(2), which allows the Secretary to certify a group of workers if sales or production, *or both*, of the subject firm have decreased absolutely.

Such an approach, however, would allow Labor virtual unbridled discretion in assessing trade adjustment assistance claims. If the record indicates that sales *have* decreased absolutely, but not production, the Secretary can simply disregard the sales side of the equation and deny certification because production remained constant, or increased. Conversely, Labor can disregard production and deny certification because sales did not decrease (as occurred here). This interpretation of Labor's discretion would "plainly subject the statutory rights of severed workers to facile manipulation and 'quick shuffles' by Labor and thereby lead to the *de facto* denial of those rights." Plaintiff's Reply at 9.

In addition, plaintiff asserts that Labor errs when it fails to delineate separate findings [6] as to both sales and production. *See Former Employees of Bass Enterprises Prod. Co. v. United States*, 12 CIT ——, 688 F.Supp. 625 (1988). "Labor did not distinguish between sales *and* production of oil and natural gas, nor did it offer any explanation for not even addressing the decline in sales *and* production of natural gas." *Id.* at 631 (emphasis supplied). Such neglect, among other things, resulted in the vacating of Labor's determination denying adjustment assistance; the case was remanded for a new investigation. *Id.* at 632.

Here, it appears that Labor made separate findings as to oil and natural gas. Notwithstanding this division, Labor nonetheless failed to address the *production* of both oil and natural gas by Parallel. Since *Bass* requires a separate finding for oil and natural gas as well an application of those separate findings to *both* sales and production, Labor's determination in this case was not in accordance with the law.

Thus, because Labor has failed to consider the impact of oil and natural gas imports on the production (and thus, exploration, as required by the amendment) activities of Parallel, the Court finds that Labor's denial of certification was not supported by substantial evidence in the administrative record and was otherwise not in accordance with the law. Therefore, the Secretary's determination is vacated and this action is remanded, with instructions for the Secretary of Labor to consider whether, under 19 U.S.C. § 2272(a)(3), increases of imported oil and natural gas contributed importantly, or threatened to contribute importantly, to the decline in sales and production (including exploration) of oil and natural gas of Parallel Petroleum Corporation.

The Secretary is directed to prepare and issue a final determination consistent with this opinion within thirty days of the date of this opinion and, through counsel, to provide the Court with a copy of the revised determination within five days of its issuance.

SO ORDERED.

---

**6.** These findings cannot be "arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *Former Employ-* *ees of Bass Enterprises Prod. Co. v. United States*, 12 CIT ——, 688 F.Supp. 625, 627 (1988).